1    Michael S. Sorgen (State Bar No. 43107)
     LAW OFFICES OF MICHAEL S. SORGEN
2    240 Stockton Street, 9th Floor
     San Francisco, CA 94108
3    Telephone:     (415) 956-1360
     Facsimile:     (415) 956-6342
4
     Attorney for Plaintiff
5    FRANCISCA MORALEZ

6

7                        UNITED STATES DISTRICT COURT

8                       NORTHERN DISTRICT OF CALIFORNIA

9                                    C   07 3807  EDL

10   FRANCISCA MORALEZ,                     Case No.:

11              Plaintiff,                  **COMPLAINT FOR DISABILITY
                                            DISCRIMINATION, FAILURE TO
            vs.                             ACCOMMODATE, AND
12                                          CONSTRUCTIVE DISCHARGE**

13   ELAINE L. CHAO, SECRETARY OF THE
     U.S. DEPARTMENT OF LABOR; U.S.
14   DEPARTMENT OF LABOR,                   JURY TRIAL DEMAND
     EMPLOYMENT STANDARDS
15   ADMINISTRATION

16              Defendants.

17

18

19                       **PROCEDURAL ALLEGATIONS**

20        1.      This is an action under Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. §

21   705 *et seq.*, as amended by the Civil Rights Restoration Act of 1987 and the Americans with

22   Disabilities Act of 1990 (collectively referenced as "Rehabilitation Act"), which prohibits

23   discrimination on the basis of disability by the federal government, federal contractors, and other

24   entities that receive federal financial assistance.

25        2.      Defendant ELAINE L. CHAO is the Secretary of the UNITED STATES

26   DEPARTMENT OF LABOR ("DOL"), and as such, is responsible for all of its policies and

27   operations.

28   COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO
     ACCOMMODATE, AND CONSTRUCTIVE DISCHARGE                                          1

3.    Defendant DOL is a federal agency of the United States of America.  Its principal place of business is in Washington, D.C. and at all relevant times it has maintained a district office in this judicial district.

4.    At all times mentioned herein, Plaintiff FRANCISCA MORALEZ was a resident of the State of California and was employed by defendants as an Equal Opportunity Specialist ("EOS") at the Oakland District Office ("ODO") of the Office of Federal Contract Compliance Programs ("OFCCP") of the Employment Standards Administration.

5.    The unlawful disability discrimination alleged herein was committed within the jurisdiction of the United States District Court for the Northern District of California.

6.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 1343.  This action is authorized and instituted pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 705 *et seq.*

## FIRST CAUSE OF ACTION
### (Disability Discrimination for Failure to Reasonably Accommodate)

Plaintiff realleges paragraphs 1 through 6 and incorporates them herein as if fully set forth.

7.    Ms. Moralez began working as a GS-9 EOS for the Oakland District Office of the OFCCP in September 1997.  Later, plaintiff was promoted to the GS-12 level and worked as an EOS at that level until September 2006.  The essential functions of plaintiff's job as an EOS included investigating discrimination complaints, conducting compliance evaluations of federal contractors, and providing compliance assistance.  Ironically, plaintiff herself began experiencing discrimination based on her disability.

8.    In or about January 2001, plaintiff was diagnosed with rheumatoid arthritis, a disease that causes chronic inflammation of her joints and that subsequently caused severe joint destruction.  Plaintiff is a qualified individual with a disability under the Rehabilitation Act in that her rheumatoid arthritis is a physical impairment that substantially limits her ability to perform major life activities, including, but not limited to, working, walking, and performing

1  manual tasks. At all times mentioned herein, Plaintiff was qualified for her position and was

2  willing and able to perform the essential functions of her job if reasonable accommodation had

3  been provided by defendants.

4        9.      In 2001, Angel Luevano, the District Director of the ODO at the time, offered to

5  purchase a powerchair for Ms. Moralez as an accommodation for her disability. Luevano did not

6  request that plaintiff sign a medical release when he made his offer. Plaintiff declined his offer

7  because she did not feel that she needed a powerchair at that time. Luevano later provided

8  Moralez with other reasonable accommodation, such as a rolling briefcase and flexible time

9  management, without any medical documentation, and plaintiff accepted such accommodations.

10        10.     From 2002 to early 2005, Ms. Moralez and Dr. Alberto Rocha, Assistant District

11  Director at the ODO, engaged in a productive interactive process to reasonably accommodate

12  plaintiff's disability. Among other accommodations, Dr. Rocha often allowed plaintiff to work

13  from home three to four times per week, allowed her to maintain her assigned laptop at home,

14  allowed her additional time to commute, and assisted her with transportation for work-related

15  functions. Dr. Rocha never asked plaintiff to sign a medical release or to provide medical

16  documentation before providing these accommodations to plaintiff.

17        11.     Despite these accommodations, plaintiff's condition gradually became worse.

18  When her working conditions became extremely difficult and painful, plaintiff wrote a letter on

19  March 28, 2005 to former Deputy Regional Director Bill Smitherman (currently the Regional

20  Director) requesting an electric powerchair to use at work and permission to work at home for

21  two to three days per week. Plaintiff clearly explained that as a result of her rheumatoid arthritis,

22  she had difficulty "walking, sitting down, raising up from a sitting position, climbing stairs,

23  walking down stairs, and lifting/carrying over two pounds while at work." Plaintiff further

24  explained that a powerchair would increase her mobility and thus help her to perform the

25  essential functions of her job.

26        12.     Plaintiff also presented medical documentation from her physician, Dr. Marcey

27  Shapiro, who indicated that plaintiff had severe ongoing rheumatoid arthritis with degeneration

28
COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO
ACCOMMODATE, AND CONSTRUCTIVE DISCHARGE                                    3

1    in her knees, feet, and shoulders.  Dr. Shapiro noted that plaintiff might have "flare" periods,

2    during which she might need to arrive late to work or miss work intermittently, depending on the

3    severity of the flares.  Dr. Shapiro also indicated that she would need information from the

4    OFCCP about the essential functions of plaintiff's job in order to assess her ability to perform

5    them, but the OFCCP never provided this information.

6        13.    Plaintiff's requests for accommodation were reasonable.  Plaintiff had been

7    allowed to work from home a few days per week for the previous six years, and the cost of a

8    powerchair for plaintiff would not have created an undue financial hardship for the OFCCP.

9    Defendants never asserted that plaintiff's requested accommodations would result in undue

10   hardship.  The OFCCP had and continues to have a policy and practice of refusing to

11   accommodate qualified disabled employees.

12       14.    On May 3, 2005, Trent Williams, Acting District Director of the Oakland office,

13   sent a memo to plaintiff deferring her requests for reasonable accommodation.  Williams stated

14   that the OFCCP would need to send her requests to the Public Health Service ("PHS").  Williams

15   asked plaintiff to sign a medical release form authorizing the PHS to review her medical files and

16   to provide documentation from her physician explaining the nature of her disability and how her

17   requested accommodations would assist her in performing the essential functions of her job.

18       15.    Plaintiff did not sign the medical release because she never before had been

19   requested to do so and believed that it was a form of harassment that violated her privacy rights.

20   Moralez also believed that additional medical documentation was unnecessary under the Equal

21   Employment Opportunity Commission ("EEOC") interpretive guidelines for the Rehabilitation

22   Act, because she was clearly disabled and had provided all the necessary medical information to

23   her supervisor.  Furthermore, Moralez anticipated that her direct supervisor, Dr. Rocha, would

24   describe and explain her medical condition and reasonable accommodation needs to other agency

25   officials.  However, agency officials never discussed plaintiff's needs with Dr. Rocha.

26       16.    Pending the result of the PHS review, Williams told plaintiff that he would relax

27   the agency's tardiness and absentee policies as a reasonable accommodation for her disability.

28
COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO
ACCOMMODATE, AND CONSTRUCTIVE DISCHARGE                                        4

1  Williams did not request any medical documentation from plaintiff before offering her these
2  accommodations.

3       17.    Plaintiff's accommodation requests were never forwarded to the PHS.

4       18.    On May 19, 2005, plaintiff filed an informal complaint of disability
5  discrimination. In an effort to resolve the matter as quickly as possible, plaintiff agreed to
6  participate in two mediation sessions. However, defendants did not engage in these sessions in
7  good faith. No agency representative attended the first mediation session in July 2005 or even
8  bothered to tell plaintiff in advance that nobody would be there. The second session in August
9  2005 lasted for approximately ten minutes with essentially no negotiations.

10      19.    At that time, plaintiff provided additional medical documentation from her
11 physician indicating the nature of her disability and the need for her requested accommodations.
12 The handwritten note from Dr. Shapiro specifically indicated plaintiff's difficulties with standing
13 and walking and her need for a motorized scooter to help her to adequately perform her job
14 duties. The note also indicated that the most ideal work arrangement would be for plaintiff to
15 work from home three days per week, which would reduce her ambulation.

16      20.    Deputy Regional Director Smitherman complained that the note was illegible and
17 not signed by Dr. Shapiro, even though the note was written on Dr. Shapiro's letterhead.
18 Plaintiff then provided Smitherman the same note, typed and signed by Dr. Shapiro. However,
19 even with this additional documentation that clearly explained Moralez' need for
20 accommodations, Smitherman told plaintiff that the agency would not purchase a powerchair for
21 her but might let her work from home two days per week.

22      21.    On August 17, 2005, plaintiff filed a timely complaint of disability discrimination
23 for failure to reasonably accommodate. A true and correct copy of such complaint is attached
24 hereto as Exhibit A. On December 23, 2005, the DOL dismissed her claim as insufficiently ripe
25 for investigation. On June 16, 2006, the EEOC reversed the dismissal of plaintiff's case, finding
26 that she had a legitimate claim.

27      22.    As a direct and proximate result of OFCCP's discriminatory failure to

28 COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO
ACCOMMODATE, AND CONSTRUCTIVE DISCHARGE                          5

1    accommodate plaintiff's disability, plaintiff has and continues to suffer general and special

2    damages, including, but not limited to, loss of employment, loss of earnings and benefits, future

3    livelihood, pain and suffering, and emotional distress, in an amount to be determined according

4    to proof.

5        23.    As a further direct and proximate result of defendants' acts, plaintiff has been

6    compelled to retain attorneys, and has and will continue to incur fees and costs in pursuing this

7    action.

8                                **SECOND CAUSE OF ACTION**
                        **(Constructive Discharge Based on Disability)**

9

10       Plaintiff realleges paragraphs 1 through 23 and incorporates them herein as if fully set

     forth.
11

12       24.    Plaintiff continued working in excruciating pain at the ODO without reasonable

13   accommodation for her disability.  As a result, her rheumatoid arthritis became worse, to the

     point where she had to take medical leave on May 15, 2006.  Before taking her medical leave,
14
     she informed her supervisor that she could not continue working at the office without her
15
     requested accommodations.
16

17       25.    Plaintiff still had not heard anything from agency officials regarding any

18   accommodations for her disability.  Since she was incapable of returning to work without

     accommodation, she was compelled to apply for disability retirement at the end of May 2006.
19
     On September 29, 2006, her disability retirement was granted and plaintiff formally retired from
20
     the federal workforce.  Fourteen months had passed between her initial request for a reasonable
21
     accommodation and her application for disability retirement.
22

23       26.    Defendants' failure to reasonably accommodate her disability compelled plaintiff

24   to apply for disability retirement, because her extreme physical pain made her working

     conditions intolerable.  These working conditions would be intolerable to any reasonable person
25
     in plaintiff's position.  The lack of accommodations also made it virtually impossible for plaintiff
26
     to perform the essential functions of her job.
27

28   COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO
     ACCOMMODATE, AND CONSTRUCTIVE DISCHARGE                                        6

27.    By willfully and intentionally failing to promptly accommodate plaintiff's disability, defendants ensured that she would be unable to continue working at the OFCCP. If defendants had granted her accommodation requests, plaintiff would have still been able to continue working at the ODO.

28.    On November 16, 2006, Ms. Moralez filed a timely complaint alleging constructive discharge. A true and correct copy of such complaint is attached hereto as Exhibit B. In February 2007, the agency consolidated into a single case her complaints for disability discrimination and constructive discharge, but nonetheless has failed to issue a final agency decision within 180 days.

29.    As a direct and proximate result of defendants' discriminatory actions and failure to accommodate plaintiff's disability, plaintiff has and continues to suffer general and special damages, including, but not limited to, loss of employment, loss of earnings and benefits, future livelihood, pain and suffering, and emotional distress, in an amount to be determined according to proof.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief as follows:

1.    Damages compensating plaintiff for wages and benefits to which she would have been entitled had she not been adversely affected by defendants' discriminatory acts, including, but not limited to, back pay and front pay until plaintiff's retirement age of 65;

2.    Damages to plaintiff for her non-pecuniary losses, including, but not limited to, pain and suffering, emotional distress, and humiliation, in amounts to be determined at trial;

3.    Prejudgment interest;

4.    Reasonable attorney's fees pursuant to 42 U.S.C. §§ 2000e-5(k) and 1988;

5.    Such further relief as the court deems necessary and proper.

Dated: July 25, 2007          By: _____

Michael S. Sorgen
Attorney for Plaintiff FRANCISCA MORALEZ

COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO
ACCOMMODATE, AND CONSTRUCTIVE DISCHARGE                                    7