Michael S. Sorgen (State Bar No. 43107)
Joyce Kawahata (State Bar No. 113159)
Catherine A. Vais (State Bar No. 251253)
LAW OFFICES OF MICHAEL S. SORGEN
240 Stockton Street, 9th Floor
San Francisco, CA 94108
Telephone:   (415) 956-1360
Facsimile:   (415) 956-6342

Attorney for Plaintiff
FRANCISCA MORALEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCA MORALEZ,<br><br>   Plaintiff,<br><br>vs.<br><br>ELAINE L. CHAO, SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR, EMPLOYMENT STANDARDS ADMINISTRATION<br><br>   Defendant. | Case No.: C 07-3807 (EDL)<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL MEDICAL EXAMINATIONS OF PLAINTIFF**<br><br>Date: August 12, 2008<br>Time: 9:30 a.m.<br>Courtroom E – 15th Floor |

## I. STATEMENT OF FACTS

Plaintiff Francisca Moralez served for more than nine years as an Equal Opportunity Specialist ("EOS") at the Oakland District Office ("ODO") of the Office of Federal Contract Compliance Programs ("OFCCP") of the U.S. Department of Labor's Employment Standards Administration. The OFCCP is the federal agency dedicated to ensuring that government contractors do not engage in employment discrimination. Ironically, the OFCCP itself has repeatedly engaged in the very discrimination that it exists to prevent.

On March 28, 2005, after eight years of working for defendant, Ms. Moralez requested reasonable accommodation for her rheumatoid arthritis: (1) an electric powerchair to use at work and (2) permission to work from home several days per week (flex-time was common practice

within the agency, even for non-disabled employees).  Over the course of the following year, defendant used forestalling tactics such as unnecessarily requesting an unlimited release of plaintiff's medical records and extensive documentation of what was an obvious disability.  Eventually, defendant's hostile and recalcitrant attitude and plaintiff's physical pain made working conditions intolerable in the absence of the reasonable accommodations Ms. Moralez had requested.  As a result of defendant's discriminatory refusal to provide reasonable accommodations, Ms. Moralez was forced to take a medical leave from work and ultimately to retire early on disability.

Throughout the discovery period, defendant has requested that plaintiff sign an open-ended release of *all* medical and psychological records from January 2001 to the present and that she submit to DMEs.  However, Ms. Moralez has produced all relevant medical information available to her.  Plaintiff's third day of deposition testimony was taken on July 3, 2008, primarily on the subject of her medical treatment and records.  Plaintiff's treating therapist, Gail Hunt, is scheduled to be deposed on August 1, where she will describe her treatment and diagnosis of plaintiff.  Ms. Hunt has also provided defendant with a clinical summary and report.  Plaintiff has offered a deposition of her treating physician, Dr. Marcey Shapiro, but defendant has deferred that deposition until after the mediation set for August 5.  Nonetheless, we have provided defendant with all records from Dr. Shapiro's files regarding treatment by her and by other healthcare providers for plaintiff's rheumatoid arthritis.  Plaintiff has also provided the name, address, telephone number and records of all other health care providers who treated her for rheumatoid arthritis.

From the inception of the lawsuit, defendant has repeatedly requested irrelevant or redundant information, mirroring its tactic in stonewalling and denying any provision of reasonable accommodation during the time Ms. Moralez was employed there. Since defendant is in possession of all relevant medical records and will have deposition testimony thereon, its experts can review and testify about all relevant medical issues. Yet defendant now seeks an order

1  compelling plaintiff to submit to their experts for both physical and mental medical examinations[1]
2  under Fed.R.Civ.P. 35(a). An order compelling plaintiff to submit to DMEs is both unnecessary
3  and premature. Defendant has failed to meet the requirements to compel a DME under Rule 35,
4  so Ms. Moralez urges the Court to deny its motion.

5  There is no demonstrated need for such a broad-based incursion into Ms. Moralez's
6  medical privacy. The only pertinent issues are (1) the status and development of her rheumatoid
7  arthritis and related conditions to determine the efficacy of the reasonable accommodations she
8  requested and was denied in 2005-2006, and (2) the extent to which she experienced emotional
9  distress as a result of the hostile and discriminatory environment at OFCCP and its refusal to then
10 provide her the requested reasonable accommodation. Ms. Moralez's primary claim is for
11 economic damages, such as lost wages stemming from her forced early retirement, as well as
12 damages for emotional distress resulting from defendant's harsh treatment during her last 18
13 months of employment. Her current physical condition is not relevant, except if there is later a
14 discussion of her possible reinstatement. Nor is her current emotional condition irrelevant, since
15 her emotional distress faded after Ms. Moralez left the work environment and took the disability
16 retirement.

## II. PLAINTIFF'S CURRENT PSYCHOLOGICAL CONDITION IS NOT "IN CONTROVERSY"

19 Rule 35 permits the Court to order an independent medical examination where the
20 defendants have established that (1) plaintiff's mental or physical condition is "in controversy,"
21 and that (2) "good cause" exists for the mental and physical examinations. *Schlagenhauf v.*
22 *Holder,* 379 U.S. 104, 118-119 (1964). According to the Supreme Court, the "in controversy"
23 and "good cause" requirements of Rule 35(a) "are not met by mere conclusory allegations of the
24 pleadings – nor by mere relevance to the case – but require an affirmative showing by the movant
25 that each condition as to which the examination is sought is really and genuinely in controversy
26 and that good cause exists for ordering each particular examination.... The ability of the movant to

---

[1] For purposes of this memorandum, plaintiff uses the term defense medical exam ("DME") to more accurately describe the non-independent nature of such examinations.

P's Memo in Opp. to D's Mot. to Compel Medical Examinations (Case No. C073807 ED)         3

1  obtain the desired information by other means is also relevant." *Id.,* 379 U.S. at 118.  The Court
2  must then decide, by making a "discriminating application", whether the party seeking a mental or
3  physical examination has adequately demonstrated the existence of the Rule's requirements of "in
4  controversy" and "good cause".  *Id.*, 379 U.S. at 118-122. This requires a greater showing than
5  for other types of discovery under Rule 26, Fed. R. Civ. P.  *Morton v. Haskell Co.,* 1995 WL
6  819182 (M.D. Fla. 1995).

7        The case most relied upon by courts in this Circuit is *Turner v. Imperial Stores*, 161
8  F.R.D. 89 (S.D. Cal. 1995). *Turner* stands for the proposition that mere assertion of emotional
9  distress damage, without more, is insufficient to establish that Plaintiff has placed her mental
10 condition "in controversy."  The court in *Turner* enumerated certain factors, one or more of
11 which must be present in order to satisfy the "in controversy" requirement. *Turner*, at 95.

12       Defendant claims that two of the *Turner* factors are present here: (1) an allegation of a
13 specific mental or psychological injury or disorder; and (2) plaintiff's offer of expert testimony to
14 support a claim of emotional distress.  Defendant's Memo, 4:13-22.  However, Ms. Moralez's
15 psychological symptoms (depression, anxiety, insomnia, etc.) are a thing of the past. She has not
16 placed her *current* mental condition "in controversy".  Moreover, plaintiff has not hired an outside
17 expert witness to support her claim, but is merely designating as an expert her treating therapist,
18 Ms. Gail Hunt, in order to avoid any dispute as to the permissible scope of her percipient or
19 opinion testimony.  Thus, because plaintiff alleges only *past* emotional distress, and her therapist
20 will base her testimony on information learned during her treatment of plaintiff, neither *Turner*
21 factor applies to the case at hand.

22       Although plaintiff does allege specific symptoms of emotional distress for which she
23 sought treatment, she does not raise a claim of ongoing or permanent psychological harm. *Jansen*
24 *v. Packaging Corp. of Am.*, 158 F.R.D. 409, 410-11 (N.D.Ill. 1994) (A mental injury is asserted
25 when a plaintiff alleges a permanent or ongoing mental disorder or emotional distress);
26 *Benchmaster, Inc. v. Kawaelde*, 107 F.R.D. 752, 754 (E.D.Mich. 1985) (psychiatrist could aid
27 only in determining present, as opposed to past, emotional disturbance). In *Curtis v. Express,*
28 *Inc.,* 868 F.Supp. 467, 468-69 (N.D.N.Y. 1994), the plaintiff sued her former employer alleging

discrimination and a hostile work environment. The defendant, in seeking to compel a DME of plaintiff, claimed that the plaintiff had placed her mental condition at issue by seeking compensation for her emotional distress. The court disagreed, finding that plaintiff did not raise a claim of ongoing psychological harm and stated that, "given the fact that plaintiff only presents a claim for past mental suffering, there is no basis for a Rule 35(a) order requiring a mental examination." *Curtis*, at 469.

Had she asserted the existence of an ongoing mental illness, that might have been a sufficient basis to find her mental condition in controversy. See, *e.g., Hodges v. Keane*, 145 F.R.D. 332, 334 (S.D.N.Y. 1993); *Vinson v. Superior Court*, 43 Cal.3d 833, 840, 239 Cal.Rptr. 292, 740 P.2d 404 (1987). But Ms. Moralez does not claim that her mental injury is ongoing, or that she ever suffered from a psychiatric disorder. Indeed, her treating therapist, Gail Hunt, attributes Ms. Moralez's stress and anxiety to the way she was treated at work, especially after she made her formal request for reasonable accommodation. Ms. Hunt's report clearly states that plaintiff no longer suffers the emotional distress that resulted from defendant's harsh treatment of her and its refusal to provide her reasonable accommodation. Declaration of Ellen Fizgerald in Support of Defendant's Motion to Compel IME ("Fitzgerald Declaration"), Exhibit B, pp. 6-7. In fact, her emotional distress diminished markedly after she was forced to take the disability retirement and was thereby removed from the hostility of the work environment. Id. Hence, that basis for granting a Rule 35(a) order does not exist. *Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216, 222 (S.D.N.Y. 1994). The ability of an examiner to gauge *prior* mental state by means of a current examination is dubious at best. *Jansen v. Packaging Corp. of America*, 158 F.R.D. 409, 410 (N.D.Ill. 1994).

To find that allegations of pain and suffering that occurred in the past necessarily place one's mental condition in controversy would "open the floodgates to requests for mental examinations whenever a plaintiff alleged past pain and suffering." *Hodges*, *supra,* at 335. Mental DMEs, because of their inevitably intrusive nature, should only be ordered where necessary to assess a plaintiff's present mental condition. If the condition at issue is a thing of the past, a DME is a completely unjustified violation of the plaintiff's privacy. As Magistrate Judge Trumbull

explained in *Lytel v. Simpson,* 2006 WL 2053516 (N.D. Cal. 2006): "One rationale for denying requests for examinations where there is no ongoing emotional distress is that there is no current condition for the examiner to observe. When all of the distress is truly in the past, there is little to be gained from an examination that cannot be obtained from the individual's past medical records and a deposition of the doctors who treated the individual at the time." In fact, the court in *Holt v. Ayers,* 2006 WL 2506773 (E.D.Cal. 2006), stated that it was "unaware of any case, published or unpublished, in which a mental examination under Rule 35(a) was authorized to uncover mental states from the past. The accepted practice with regard to uncovering past mental states has been for retained experts to review data that existed at the relevant time and to determine from that data the mental state of the individual under consideration."

In the present case, defendant has been provided with plaintiff's medical records from the relevant time period, a detailed report by plaintiff's treating therapist, and depositions of plaintiff and of those who treated her during her period of emotional distress. Defendant has abundant information through which to ascertain plaintiff's past mental state – all that is at issue here. A DME to inquire into her current mental state would be a wholly irrelevant and unnecessary intrusion on her privacy.

Rule 35 does not contemplate that a mental examination be ordered routinely simply because plaintiff has made a claim for emotional distress damages. *Cody v. Marriott*, 103 F.R.D. 421, 422 (D. Mass. 1984). Because of the invasive nature of mental examinations, courts should decline to order them unless necessary in order to ensure a fair trial for the moving party. *Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 298 (E.D.Pa.1983). As the court in *Ricks v. Abbott Laboratories,* 198 F.R.D. 647, 649 (D.Md. 2001), stated:

> A court may limit discovery 'if the burden or expense of the proposed discovery outweighs its likely benefit.' Fed.R.Civ.P. 26(b)(2). Because an expert is not needed to explain ordinary emotional distress, the likely benefit of a mental examination is minimal. The burden, however, is substantial. Any mental examination involves an intrusion upon the privacy of the subject. This is especially true where, as here, the psychiatrist performing the examination would report the results to an adverse party.

The Ricks court explained that a trier of fact does not need an expert to help understand normal reactions of grief, anxiety, anger and frustration that any person feels when something bad occurs. Furthermore, Ms. Moralez's claim for emotional distress damages is by no means the crux of her

1    claims – her focus is on the loss of earnings, retirement, and social security benefits.  There is little
2    justification for an intrusive mental examination where only a small portion of plaintiff's damages
3    arise from her emotional distress. Compare e.g. *Morton v. Haskell Co.,* 1995 WL 819182 (M.D.
4    Fla. 1995).

5          Although Ms. Moralez is offering expert testimony to support her claims, her treating
6    therapist and her treating physician will be designated as experts for the sole purpose of being
7    allowed to testify as to their diagnosis and prognosis, as opposed to just percipient observations.
8    The court in *Sullivan v. Glock, Inc.*, 175 F.R.D. 497 (D. Md. 1997), explained the concept of a
9    "hybrid fact/expert witness," such as a treating physician who is later designated as an expert.
10   The court distinguished situations in which the basis for such witness's opinions "derive from
11   information learned during the actual treatment of the patient – as opposed to being subsequently
12   supplied by an attorney involved in litigating a case involving the condition or injury". *Id.,* at 501.
13   It is the latter situation that the *Turner* court intended when it named expert testimony as a factor
14   for placing one's mental state "in controversy," *supra* at 95.

15   III.   PLAINTIFF'S PHYSICAL CONDITION IS ALSO NOT IN CONTROVERSY

16         Defendant uses a similar analysis to the factors identified in *Turner* to conclude that
17   plaintiff's physical condition is also in controversy.  While plaintiff concedes that she suffers from
18   a specific disorder (rheumatoid arthritis) and that she intends to offer expert testimony from her
19   treating physician, Marcey Shapiro, M.D., her physical condition has not yet been placed in
20   controversy.

21         It is undisputed that plaintiff is disabled within the meaning of the Rehabilitation Act, 29
22   U.S.C. § 705 *et seq.*  That her disability and the pain associated with it made it impossible for her
23   to work without reasonable accommodation three years ago does not place her current physical
24   condition in controversy.  An examination of her current physical condition would only be
25   relevant in the event of possible reinstatement as to the duties she can perform and her need for
26   accomodation. Alternatively, if she must support a claim for front pay by demonstrating how long
27   she would have been able to work had she received the requested accommodation, plaintiff's
28   physical condition may then be in controversy as to that issue.  Thus, a DME of plaintiff by a

1  rheumatologist is as yet unwarranted and premature until after the the August 5 mediation.
2  Thereafter, the parties should surely be able to resolve the relevant medical issues and cooperate
3  to assure fairness while avoiding undue intrusion into Ms. Moralez's medical privacy.

4      IV.  <u>NO GOOD CAUSE EXISTS FOR RULE 35 MENTAL AND PHYSICAL</u>
5            <u>EXAMINATIONS</u>

6        Defendant does not have good cause for DMEs of plaintiff. In *Franco v. Boston*
7  *Scientific Corp.*, 2006 WL 3065580 (N.D. Cal. 2006), Magistrate Judge Seeborg named four
8  factors that courts have considered in determining whether "good cause" exists to order a Rule 35
9  examination. These factors include, but are not limited to: (1) the possibility of obtaining desired
10  information by other means; (2) whether plaintiff plans to prove her claim through testimony of
11  expert witnesses; (3) whether the desired materials are relevant; and (4) whether plaintiff is
12  claiming ongoing emotional distress. *Id.*

13        Regarding the first factor,[2] defendant is required to utilize other discovery procedures
14  before seeking the examination. *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979). Here,
15  the defendant claims that the information they would obtain through their DMEs could not be
16  obtained by other means. But Gail Hunt will be deposed on August 1. Defendant can not claim
17  to have exhausted alternate discovery procedures for purposes of showing good cause until after
18  they take Ms. Hunt's deposition. Defendant argues that "the opportunity to examine plaintiff in a
19  clinical setting will provide them with insights and firsthand impressions that cannot be obtained
20  from reading a cold medical record." Defendant's Memo, 5:24-26. But an examination of
21  plaintiff's current mental condition would be unable to provide "insights and firsthand
22  impressions" as to plaintiff's past mental condition at the time of her emotional distress.

23        Good cause does not now exist to compel independent medical examinations of plaintiff.
24  Neither plaintiff's mental nor physical condition have as yet been placed in controversy.
25  Defendant has not met its burden under Rule 35, so this Court should deny its motion to compel
26  DMEs.

27        Prior to ruling on Defendant's Motion to Compel, the Court should order further meet
28

---

[2] The other three factors have been thoroughly addressed in parts II and III above.

P's Memo in Opp. to D's Mot. to Compel Medical Examinations (Case No. C073807 ED)    8

1  and confer.  It is likely that the parties could come to an agreement if a DME is not now
2  compelled.  Defendant will receive Gail Hunt's deposition testimony on August 1.  At the second
3  day of mediation on August 5, the parties will determine whether the appropriate medical
4  information pertains to reinstatment or to a claim for front pay.  Expert designation will occur by
5  September 5; so defendant may depose Dr. Shapiro at that time or sooner.  Defendant has already
6  been provided with all of Ms. Moralez's medical records that are available.  If, after reviewing the
7  records, deposing Gail Hunt and Dr. Shapiro, and identifying the medical issues, defendant still
8  believes that Ms. Moralez's psychological and physical conditions are in controversy, then the
9  parties can consider stipulating as to the appropriate scope, conditions and limitations of such
10 examination.  Prior to the completion of all depositions and the August 5 mediation, an order
11 compelling DMEs is premature and unnecessary.

## V. IF DME *IS* ORDERED, THE COURT SHOULD IMPOSE REASONABLE CONDITIONS ON MANNER AND SCOPE

Plaintiff requests that if any examination is permitted, the Court set certain conditions.  A motion to compel a physical or mental examination pursuant to Fed. R. Civ.P. 35(a) is subject to the general provision of Rule 26(c) that allows a court to issue any protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed.R.Civ.P. 26(c).  *Tirado v. Erosa*, 158 F.R.D. 294, 297 (S.D.N.Y.1994); *Hirschheimer v. Associated Metals & Minerals Corp.*, 1995 WL 736901 (S.D.N.Y. 1995).  The Court has the discretionary authority to impose conditions which, balancing the factors in each individual case, ensure that the interests of justice are obtained.  *Morton v. Haskell Co.,* 1995 WL 819182 (M.D.Fla. 1995), *Tirado v. Erosa*, 158 F.R.D. 294, 295-96 (S.D.N.Y. 1994). Common conditions to an order for a DME include durational limits, disclosure of which tests will be performed and their purpose, and providing the plaintiff with documentation of the tests and their results.  *Hirschheimer v. Associated Metals & Minerals Corp.*, 1995 WL 736901 (S.D.N.Y. 1995);*Gensbauer v. May Dept. Stores Co.,* 184 F.R.D. 552; *Vreeland v. Ethan Allen, Inc.*, 151 F.R.D. 551; Fed. R. Civ. Proc. 35(b)(1).

Rule 35(a) provides that, if a DME is ordered, the order must specify the time, place,

manner, conditions and scope of the examination. Fed. R. Civ. Proc. 35(a). The court in *Woods v. Century I. L.C.*, 1993 WL 33339 (D.Kan. 1993), overruled a motion for a psychological examination for the failure of the movant to provide any particulars of the examination other than the identity of the examiner. Defendant here has not identified its examiners, nor the time and place of the examinations. Further, defendant has proposed a sweeping list of subjects its examiners should be allowed to explore, without any limitation of scope. Defendant's Memo, 7:3.[3] Defendant should be required to disclose the specific tests to be administered in advance and explain their purpose. "Requiring [a plaintiff] to undergo unidentified testing would deprive him of the opportunity to seek an order precluding those tests that may be irrelevant to this litigation." *Hirschheimer*, *supra,* 1995 WL 736901. Defendant requests that "the specific tests to be administered be revealed at the time of the examination. Defendant's Memo, 7:9-10. This request poses too great a risk that the tests administered would exceed the limits of relevancy. Given plaintiff's constant state of pain from her rheumatoid arthritis, the examination(s) should also be limited as to duration just as the depositions were.

## VI.  CONCLUSION

For the foregoing reasons, the Court should enter an order denying or deferring the defendant's motion to compel defense medical examinations of plaintiff.

Dated: July 22, 2008			Respectfully submitted,

					LAW OFFICES OF MICHAEL S. SORGEN


					By: _____/s/_____
					Michael S. Sorgen
					Attorneys for Plaintiff

---

[3] Defendant's memo states: "The examiners should be provided latitude to conduct a thorough inquiry, including but not limited to..."