Michael S. Sorgen (State Bar No. 43107)
Joyce Kawahata (State Bar No. 113159)
LAW OFFICES OF MICHAEL S. SORGEN
240 Stockton Street, 9th Floor
San Francisco, CA 94108
Telephone:   (415) 956-1360
Facsimile:   (415) 956-6342

Attorney for Plaintiff
FRANCISCA MORALEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCA MORALEZ,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ELAINE L. CHAO, SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR, EMPLOYMENT STANDARDS ADMINISTRATION<br><br>　　　　　Defendants. | Case No.: C 07-3807 (EDL)<br><br>**DECLARATION OF ALBERTO ROCHA IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 10, 2008<br>Time: 2 p.m.<br>Courtroom: E, 15th Floor |

I, Alberto Rocha, declare as follows:

1. I was Assistant District Director for the Oakland District Office of Office of Federal Contract Compliance Program (OFCCP) when plaintiff Francisca Moralez worked at the agency.

2. I was Ms. Moralez's direct supervisor between February 2002 and May 2006. Ms. Moralez was well qualified for her position as a compliance officer and I gave her consistently satisfactory evaluations.

3. In July, 2001, I learned that Ms. Moralez was limited physically by rheumatoid arthritis and it was obvious from casual observation that she had difficulty walking, standing, lifting objects and rising from a seated position. She informed me that she also had difficulty manipulating objects with her arms and hands. I approved minor accommodations that were within my purview to grant, such as automatic staplers and three-hole punch, raising her desk and

DECLARATION OF ALBERTO ROCHA
Case No. C073807 EDL                    1

1  giving her assignments close to home.

2      4. I did not require that she submit a medical release form or other type of information
3  from her treating physician because the need for accommodation was obvious to me.

4      5. She discussed with me her need for a mobility device, such as a motorized wheelchair,
5  because of her physical limitations with walking, standing and getting up from a seated position.
6  She also discussed with me the possibility of working at home several days each week. I told her
7  that I thought that working at home two or three days a week would not create hardship for the
8  agency (and is a benefit available to all OFCCP employees) and that she could complete her
9  assignments without being in the office. However, I understood that these more substantial
10 accommodation requests required the approval of Bill Smitherman, Deputy Regional Director of
11 Pacific Region IX of OFCCP. I therefore instructed Ms. Moralez to make these requests to Mr.
12 Smitherman. Had I had the authority, I would certainly have granted them because it was obvious
13 to me that they would have greatly facilitated her ability to fulfill the essential duties of her job and
14 serve the best interest of the government.

15     6. I was never contacted by Mr. Smitherman regarding Ms. Moralez's reasonable
16 accommodation requests nor was I ever involved in any discussions held with Ms. Moralez
17 regarding her formal requests to Mr. Smitherman. I believe that I was kept out of the loop
18 because I was seen as sympathetic and accommodating to disabled compliance officers.

19     7. In about March, 2005, I warned Ms. Moralez that Sarah Nelson was contemplating
20 disciplining her and strongly urged her to get certified for leave under the Family and Medical
21 Leave Act. When I submitted Ms. Moralez' Form WH 380 to Ms. Nelson, she became angry and
22 tossed the form aside on her desk. Ms. Nelson had stated in the past that "I don't believe people
23 who submit FMLA requests." To my knowledge, Ms. Nelson never responded to Ms. Moralez
24 request.

25     8. Ms. Moralez first submitted this form to me in early 2005. I noted that Ms. Moralez'
26 physician had not indicated on the form recommendations as to accommodations that would
27 enable her to perform the duties and functions of her job efficiently. However, her doctor did
28

DECLARATION OF ALBERTO ROCHA
Case No. C073807 EDL                    2

1 request a copy of the essential functions. I forwarded this request to then Acting District Director
2 Sarah Nelson. I do not know if Ms. Nelson ever complied with the doctor's request.

3     9. I was never provided with the department's policy on reasonable accommodation and
4 never received any training in this regard. I was informed by Regional Director Woody Gilliland
5 that all managers should forward reasonable accommodation requests to him and that he would
6 personally handle them.

7     10. Sometime after Ms. Moralez' second mediation, she informed me that Mr.
8 Smitherman had denied her requests for reasonable accommodation. From approximately
9 September 2005 until Ms. Moralez left the agency, she continued to discuss with me her need for
10 accommodation and of her increasing physical and emotional difficulties due to the lack of such
11 accommodation.

12     11. During Trent Williams' tenure as Acting District Director at the Oakland District
13 Office, I initiated discussions with him at least once a month about Ms. Moralez' need for
14 accommodation. In a rude manner and sarcastic tone, he told me repeatedly to not worry about it
15 because it was being taken care of. When Acting District Director Leigh Jones worked at the
16 Oakland District Office, I also approached her regarding Ms. Moralez' need for accommodation
17 and got nowhere, and finally I also discussed it with Acting District Director Ron Hiraga when he
18 arrived in February 2006 with no success.

19     12. Another employee under my supervision, Gregory Hunt, also requested reasonable
20 accommodation for asthma, and I believe that his requests were excessively delayed and
21 ultimately denied by the OFCCP.

22     13. When Ms. Moralez left work in May 2006, I was not surprised as I observed her
23 having great difficulty moving her wheelchair until she left her employment. In fact, I pushed her
24 in her wheelchair several times between August 2005 and May 2006 because she could not
25 physically do so. I also observed other compliance officers offering this same assistance to her. I
26 was surprised that Ms. Moralez lasted as long as she did without a power chair. She repeatedly
27 came into my office to discuss her need for accommodation. It was extremely physically and
28

DECLARATION OF ALBERTO ROCHA
Case No. C073807 EDL                    3

1  emotionally painful for her to endure working without the accommodation requested, and when
2  she left, she simply could not physically do it anymore.
3      14. Without a formal agreement as a reasonable accommodation for Ms. Moralez to work
4  at home, the hours she worked at home diminished.  In 2005, she worked at home approximately
5  50 hours and in 2006, I don't believe she worked at home at all.   I could visibly observe that the
6  inability for Ms. Moralez to work at home caused physical and emotional hardship for her.
7      15.  Based on personal observation, I believe that Woody Gilliland, Bill Smitherman, Trent
8  Williams, Leigh Jones, Ron Hiraga and Sarah Nelson were hostile to and prejudiced against
9  disabled compliance officers, such as Ms. Moralez.
10     16. On September 11, 2008, I was deposed by Andrew Cheng, U.S. Attorney, in San
11 Francisco, California regarding Ms. Moralez' lawsuit against the Department of Labor.  After my
12 deposition, on the same day, I was terminated by the Department of Labor, and my 26-year
13 federal career ended, a long-standing career I took great pride in.   I have personally experienced
14 the hardship the Department of Labor imposes on those individuals who attempt to assert their
15 employment rights.

17     Executed this 15th day of September, 2008, in Hayward, California.

19     _____/s/_____
20                 Alberto Rocha

DECLARATION OF ALBERTO ROCHA
Case No. C073807 EDL                    4